UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| KATHY IVEY and ARTHUR IVEY, | Civil No. 08-6407 (JRT/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO TRANSFER** |
| MCKINLEY MEDICAL, L.L.C., MOOG INC., CURLIN MEDICAL, INC., THE BROE COMPANIES, INC., HOSPIRA, INC., and ABBOTT LABORATORIES, | |
| Defendants. | |

Yvonne M. Flaherty, **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; and Robert K. Jenner, **JANET, JENNER & SUGGS LLC**, 1829 Reisterstown Road, Suite 320, Baltimore, MD 21208, for plaintiffs.

Karen M. Bohaty and Jerry W. Blackwell, **BLACKWELL BURKE P.A.**, 431 South Seventh Street, Suite 2500, Minneapolis, MN 55415; and Frederick H. Fern, **HARRIS BEACH PLLC**, 100 Wall Street, New York, NY 10005, for defendants McKinley Medical, L.L.C., Moog, Inc., and Curlin Medical, Inc.

Jeannine L. Lee, **FLYNN, GASKINS & BENNETT, L.L.P.**, 333 South 7th Street, Suite 2900, Minneapolis, MN 55402, for defendants Hospira, Inc. and Abbott Laboratories.

Plaintiffs Kathy and Arthur Ivey (collectively "the Iveys") brought this action against McKinley Medical, L.L.C. ("McKinley"), Moog Inc. ("Moog"), Curlin Medical, Inc. ("Curlin"), the Broe Companies, Inc. ("Broe"), Hospira, Inc. ("Hospira"), and Abbott

Laboratories ("Abbott"),[1] for negligence, negligent misrepresentation, fraudulent or intentional misrepresentation, strict products liability (defective design), strict products liability (failure to warn), and loss of consortium, arising out of injuries Kathy Ivey sustained following shoulder surgery. (Docket No. 1, ¶¶ 21-65.) Defendants McKinley, Moog, and Curlin filed the instant motion to transfer venue pursuant to 28 U.S.C. § 1404(a), arguing that venue would be more appropriate in the Eastern District of North Carolina. (Docket No. 57.) For the reasons stated below, the Court denies the motion.

## BACKGROUND

On November 25, 2002, Kathy Ivey had surgery on her right shoulder at a medical facility in Raleigh, North Carolina. (Docket No. 1, ¶ 14.) During the procedure, Dr. Kevin P. Speer inserted an Accufuser "pain pump" into Ivey's shoulder to inject an anesthetic called Marcaine directly into Ivey's shoulder for the following two days. (*Id.* ¶¶ 15-16; Docket No. 60 Ex. 2; Docket No. 52 at 1.) Ivey alleges that the pain pump was a substantial contributing cause of injuries she suffered after the procedure. (Docket No. 1, ¶ 27.)

On December 17, 2008, the Iveys filed suit in the United States District Court for the District of Minnesota. (Docket No. 1.) The complaint alleges that at the time of the surgery, the "[u]se of pain pumps with continuously injected anesthetic in the shoulder joint space had not been approved by the FDA, and in fact had been specifically rejected by the FDA" and "had not been adequately tested for safety or effectiveness." (*Id.*

---

[1] Three other defendants have been dismissed. (Docket No. 52.)

¶ 24(b)-(c).) The complaint also alleges that "[t]he continuous injection of medications over time directly into the shoulder . . . routinely causes serious and permanent damage to the cartilage of the shoulder joint." (*Id.* ¶ 17.) The complaint further alleges that as a result of the procedure, "Ms. Ivey suffered a narrowing of the joint space and/or a condition called 'glenohumeral chondrolysis,' which is the complete or nearly complete loss of cartilage in the shoulder joint, an irreversible, disabling, and extremely painful condition," that will cause her "to have difficulty doing the most basic tasks of everyday living" for the rest of her life. (*Id.* ¶¶ 17-18.)

The Iveys, who are citizens and residents of North Carolina, allege that McKinley, Moog, Curlin, and Broe are involved in the manufacture and sale of the Accufuser pain pump. (Docket No. 52 ¶ 1.) McKinley and Broe are Colorado corporations with their principal places of business in Colorado. Moog is a Delaware corporation with its principal place of business in New York. Curlin is a Delaware corporation with its principal place of business in California.

The Iveys allege that Hospira and Abbott manufacture Marcaine, the anesthetic used in Kathy Ivey's pain pump. (*Id.* ¶ 2.) Hospira is a Delaware corporation with its principal place of business in Illinois. Abbott is an Illinois corporation with its principal place of business in Illinois.

There are currently seventeen additional shoulder pain pump cases in the District of Minnesota, all of which are before this Court and Magistrate Judge Jeffrey J. Keyes.[2] The cases involve several different pain pump and anesthetic manufacturers. McKinley, Moog, Curlin, Hospira, and Abbott are all named defendants in one of those cases, *Block v. McKinley Medical, L.L.C.*, No. 09-1332. The plaintiff in *Block* is from North Carolina. Hospira and Abbott are defendants in six additional cases from the list of seventeen.[3] The plaintiff in one of those cases, *Voller v. I-Flow Corp.*, No. 09-1906, is a citizen of Minnesota. Abbott – but not Hospira – is a defendant in *Haymes v. DJO, LLC*, No. 09-1675.

There are other shoulder pain pump cases pending in other federal and state courts. Hospira and Abbott have noted that "issues that are common to the individual defendants in the shoulder pain pump cases . . . are presented in cases pending around the country, . . . and discovery regarding these issues is being coordinated to avoid duplication." (Docket No. 65 at 1.)

---

[2] *Davis v. I-Flow Corp.*, No. 09-2503; *Forslund v. Stryker Corp.*, No. 09-2134; *Voller v. I-Flow Corp.*, No. 09-1906; *Ishmael v. DJO, LLC*, No. 09-1693; *Wheeler v. Breg, Inc.*, No. 09-1692; *Haymes v. DJO, LLC*, No. 09-1675; *Crawford v. DJO, LLC*, 09-1674; *Anderson v. DJO, LLC*, No. 09-1673; *Krizan v. DJO, LLC*, No. 09-1341; *Block v. McKinley Medical, L.L.C.*, No. 09-1332; *Huggins v. Stryker Sales Corp.*, No. 09-1250; *McGinness v. DJO, LLC*, No. 09-1174; *Hendricks v. DJO, LLC*, No. 09-0931; *Murrell v. Zimmer, Inc.*, No. 09-0757; *Foley v. I-Flow Corp.*, No. 08-6197; *Todd v. I-Flow Corp.*, No. 08-6178; *Fougner v. I-Flow Corp.*, No. 08-5157; *Martinac v. I-Flow Corp.*, No. 08-5035; *McDaniel v. I-Flow Corp.*, No. 08-0399.

[3] *Davis v. I-Flow Corp.*, No. 09-2504; *Voller v. I-Flow Corp.*, No. 09-1906; *Ishmael v. DJO, LLC*, No. 09-1693; *Anderson v. DJO, LLC*, No. 09-1673; *Fougner v. I-Flow Corp.*, No. 08-5157; *Martinac v. I-Flow Corp.*, No. 08-5035.

There are three pain pump cases currently pending in the Eastern District of North Carolina, all of which are brought by North Carolina plaintiffs, and all of which name McKinley, Moog, Curlin, Hospira, and Abbott as defendants. *Patterson v. DJO, Inc.*, No. 09-308; *Allison v. DJO, Inc.*, No. 08-549; *Atwell v. DJO, Inc.*, No. 08-346. *Atwell* is before Judge James C. Denver, III, who is located in Raleigh, North Carolina. *Patterson* is before Senior Judge W. Earl Britt, who is also in Raleigh. *Allison* is before Senior Judge Malcolm J. Howard, who is in Greenville, North Carolina. Defendants assert (without citation) that Dr. Speer (Ivey's surgeon) performed the surgeries at issue in all three of the cases.

On June 18, 2009, McKinley, Moog, and Curlin filed a motion to transfer the instant case to the United States District Court for the Eastern District of North Carolina. (Docket No. 57.) Hospira and Abbott subsequently joined the motion. (Docket No. 65.)

## ANALYSIS

### I. MOTION TO TRANSFER

Defendants moved to transfer venue under 28 U.S.C. § 1404(a), which states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[4] The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary

---

[4] The parties do not dispute that this action could have been brought in the Eastern District of North Carolina.

inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). "[T]he party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).

In considering a motion brought under § 1404(a), courts are to balance "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Id.* at 691. A motion to transfer "require[s] a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.* The movant must "show that the balancing of the . . . factors 'strongly favors' transfer." *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1179 (D. Minn. 1996).

### A. Convenience of the Parties

The convenience of the parties factor favors retaining the case in the District of Minnesota. "To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred." *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999). Defendants have failed to make such a showing.

The parties focus on two issues related to the convenience of the parties: the home states of the parties and the existence of related litigation in the two venues.

Convenience of the defendants weighs in favor of denying the motion to transfer. All but one of the defendants has its principal place of business in a state that is significantly closer to Minnesota than to North Carolina. Defendants argue that "[t]he

defendants' respective states of residence are irrelevant," (Docket No. 66 at 6), but courts routinely consider this factor in an effort to ascertain the convenience of the parties. *See, e.g.*, *Nicollet Cattle Co. v. United Food Group, LLC*, No. 08-5899, 2009 WL 2218792, at *6 (D. Minn. July 23, 2009); *Burnett v. Wyeth Pharm., Inc.*, No. 06-4923, 2008 WL 732425, at *1 (D. Minn. Mar. 17, 2008); *Voss v. Johnson & Johnson*, Nos. 06-3728, 07-1862, 07-1584, 07-2999, 07-1661, 2008 WL 697474, at *2 (D. Minn. Mar. 12, 2008); *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999); *Brockman*, 923 F. Supp. at 1180.

Defendants argue that litigating in the Eastern District of North Carolina will be more convenient for them because they are already defending three other pain pump cases there. (Docket No. 66 at 9.) The Court finds this argument unpersuasive for three reasons. First, the Eastern District of North Carolina has made no effort to coordinate the pain pump cases before it. The three cases are being heard by three different judges in two different cities. Here, by contrast, this Court is hearing 18 pain pump cases. Even though defendants are not parties to all of those cases, the fact that this Court is hearing multiple pain pump cases, including several involving the defendants, suggests that it may be more convenient for defendants to litigate in Minnesota. Second, at this stage in the litigation, even if the Court were to transfer this case, McKinley, Moog, and Curlin would still need to defend in *Block*. Even if *Block* were eventually transferred to the Eastern District of North Carolina, Abbott and Hospira would still need to defend in several other cases pending before this Court, including *Voller*, a case likely to remain before the Court because the plaintiff is a Minnesota resident. Third, as Hospira and

Abbott have noted, "discovery regarding . . . issues [common to the individual defendants] is being coordinated [in cases pending across the country] to avoid duplication." (Docket No. 65 at 1.) Hence, defendants have failed to show that they will enjoy any added convenience through transfer.

Convenience of the plaintiffs also weighs in favor of denying the motion. Defendants argue that litigating in North Carolina would be more convenient for the Iveys, who reside in North Carolina. (Docket No. 59 at 5-6.) As the Iveys note, however, "[t]he Iveys can and have assessed their own convenience, and have chosen this forum for the judicial economy that it offers." (Docket No. 64 at 4-5.) In particular, they argue that this forum is more convenient "as a result of the fact that multiple, similar actions are pending here." (*Id.* at 3.) Courts have recognized that it would be "paradoxical" to justify transfer to the plaintiff's home state based on convenience to the plaintiff, who is presumed to have assessed the convenience of the various forums in determining where to bring suit. *CBS Interactive, Inc. v. NFL Players Ass'n*, No. 08-5097, 2009 U.S. Dist. LEXIS 36800, at *29-30 (D. Minn. Apr. 28, 2009).

Defendants have failed to show that any possible inconvenience to them resulting from litigating in Minnesota "substantially outweighs" the inconvenience that the Iveys would suffer if venue were transferred. *See Nelson*, 58 F. Supp. 2d at 1026. Therefore this factor does not support transfer.

B.  **Convenience of the Witnesses**

"The convenience of the witnesses is an important factor for the court since it determines the relative ease of access to sources of proof." *Graff*, 33 F. Supp. 2d at 1121. The relevant considerations "include the number of essential non-party witnesses, their location and the preference of courts for live testimony as opposed to depositions." *Id.* Defendants "must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Id.* at 1122 (internal quotation marks omitted). "In determining this factor, the court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Id.*

At this stage in the litigation, it is not clear that North Carolina-based third-party witnesses will provide important testimony at trial. Defendants argue that Dr. Speer, Ivey's treating surgeon, will be "[a] primary source of testimony." (Docket No. 59 at 7.) It is unclear, however, how important Dr. Speer's testimony will be. Hospira and Abbott argue that the pain pump cases "turn on uniquely individualized issues of causation and liability," and therefore "issues requiring local proof (such as plaintiff's preexisting condition and treatment, and the information provided to her doctor), will predominate this litigation." (Docket No. 65 at 1.) The Iveys, argue, however, "[m]any, perhaps most of the key witnesses are from the defendant medical device and pharmaceutical companies that are scattered across the country (and in some cases the globe)." (Docket No. 64 at 3.) Here, as in other cases alleging product defects and corporate practices such as marketing programs and applications for FDA approval, "much of the relevant

evidence may come from corporate employees and documents." *Cf. Voss*, 2008 WL 697474, at *3.

Defendants have also failed to show that North Carolina-based witnesses will not be accessible at trial. The Court currently has no reason to believe that Dr. Speer will be unwilling to testify at trial. Even if the trial schedule and travel distance were to pose an inconvenience to Dr. Speer, "treating physicians frequently rely on videotaped depositions to provide testimony, even when they reside in a district in which a Court has subpoena power to compel live testimony." *Burks v. Abbott Labs.*, No. 08-3414, 2008 WL 4838720, at *3 (D. Minn. Nov. 5, 2008). At present, there is no reason to believe that Dr. Speer's videotaped testimony would be insufficient.

Defendants have failed to demonstrate the importance of other North Carolina witnesses, and have failed to show that such witnesses would not voluntarily appear at trial. Defendants argue that other "healthcare providers" will be "critical witnesses," and that they are all located outside this Court's subpoena power. (Docket No. 59 at 7.) In their briefing, however, "defendants have not specified which witnesses will be called to testify, nor have defendants explained what testimony these witnesses will provide. Without specifying which third-party witnesses defendants intend to call, it is difficult for the Court to determine how material and important their testimony will be." *Cf. Burks*, 2008 WL 4838720, at *3. At the hearing on this motion, defense counsel for the first time named two nurses and a surgical assistant who may have some relevant testimony about Ivey's discharge instructions and the dosage and flow of Marcaine in Ivey's pain pump. Defense counsel conceded, however, that he had no reason to know one way or

the other whether these witnesses would voluntarily appear at trial in the event that either party were to request their live testimony.

Because it is not yet clear at this stage of the litigation whether the central dispute will focus on Ivey's surgery in North Carolina or whether it will instead focus on defendants' conduct in developing and marketing the pain pumps, and because defendants have failed to demonstrate that any potentially important witnesses would not appear in this Court voluntarily, it is not possible for the Court to conclude that transfer is warranted based on the convenience of third-party witnesses. *Cf. Nicollet Cattle*, 2009 WL 2218792, at *6.

### C. Interest of Justice

Courts typically consider the following factors in evaluating the interest of justice: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696. The Court addresses each factor in turn.

1. Judicial economy would be enhanced by denying the motion to transfer. Defendants argue that transfer would further judicial economy because there are three similar cases pending in the Eastern District of North Carolina. As noted above, however, it appears at this time that the Eastern District of North Carolina has not yet taken any steps to enhance judicial economy with respect to those cases. This district, by

contrast, has maximized judicial economy by consolidating all pain pump cases before the same judge and magistrate judge.

2. The presumption in favor of the Iveys' choice of forum weighs against transfer. Even though the Iveys' choice of forum is entitled to "significantly less deference" because they do not reside in Minnesota and because the events giving rise to the suit did not take place in Minnesota, *Nelson*, 58 F. Supp. 2d at 1026, "'less' deference does not mean 'no' deference, and Defendants must still overcome a presumption in favor of [the Iveys'] selection of Minnesota as a litigation forum." *CBS Interactive*, 2009 U.S. Dist. LEXIS 36800, at *25-26 (some internal quotation marks omitted).

3. Defendants have failed to show that litigating the Iveys' claims in Minnesota would be noticeably more costly than litigating the claims in North Carolina. The Iveys will likely need to call witnesses from all over the country. While some of defendants' witnesses may be from North Carolina, defendants have failed to show that their expenses of litigating in Minnesota would exceed the additional expense the Iveys would face in bringing their witnesses to North Carolina. Moreover, "[i]n considering the costs of litigating in a distant forum, defendants are national corporations with extensive resources and they should reasonably expect to face potential litigation in any forum in which they conduct business, including Minnesota." *Burks*, 2008 WL 4838720, at *4.

4. Defendants concede that "[b]ecause a judgment obtained by Plaintiffs can be enforced in any judicial district, this factor does not favor either forum." (Docket No. 59 at 9 n.6.)

5. The only potential obstacle to a fair trial in Minnesota is the risk that defendants will be unable to compel live testimony of certain North Carolina-based witnesses, but, as noted above, at this stage in the litigation such unfairness is only hypothetical.

6. Defendants have failed to identify any conflict of law issues that would support transfer.

7. This case does not present any important questions of North Carolina law that would best be resolved by a North Carolina court. Defendants argue that "[a] North Carolina court, more familiar with the prevailing law, would be better able to conduct all necessary proceedings[.]" (Docket No. 59 at 13.) Yet "[i]n the context of a motion to transfer under § 1404(a), the general view is that courts can just as easily apply the law of another state as easily as their own." *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (internal quotation marks omitted). "[W]here the legal questions involved are relatively simple – and no party has suggested otherwise here – the familiarity-with-applicable-law factor is afforded little weight." *Advanced Logistics Consulting*, 2009 U.S. Dist. LEXIS 50603, at *19; *cf. Brockman*, 923 F. Supp. at 1183 ("[A]n Idaho court should lay down the novel standard by which Idaho residents may be judged in the future.").

In summary, the Court has considered all relevant factors and the particular circumstances at hand, including the convenience of the parties, the convenience of the witnesses, and the interest of justice, and concludes that at this stage in the litigation,

defendants have failed to show that the relevant factors and circumstances strongly favor transfer of venue to the Eastern District of North Carolina.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that McKinley, Moog, and Curlin's Motion to Transfer Venue [Docket No. 57], joined by Hospira and Abbott [Docket No. 65], is **DENIED without prejudice**.

DATED: December 14, 2009　　　　　　　　　s/ John R. Tunheim
at Minneapolis, Minnesota.　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　United States District Judge